IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-280-BO

| | |
|---|---|
| MONROE BATTLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 15, 17]. On December 21, 2017, the court held a hearing on this matter in Raleigh, North Carolina [D.E. 21]. For the following reasons, plaintiff's motion [D.E. 15] is GRANTED, defendant's motion [D.E. 17] is DENIED, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for an award of benefits.

## BACKGROUND

On June 7, 2013, plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act ("Act") [Tr. 111, 129, 213–18]. Plaintiff alleged a disability of August 13, 2012. [Tr. 13]. Plaintiff's applications were denied initially and upon reconsideration. *Id.*

On July 16, 2015, an Administrative Law Judge ("ALJ") held a hearing to consider plaintiff's claims *de novo*. [Tr. 35–78, 157–59]. On September 21, 2015, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. [Tr. 13–30]. Plaintiff appealed and, on October 11, 2016, the Appeals Council denied review, thereby

rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1-4]. On December 5, 2016, plaintiff filed a complaint in this court seeking review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). [D.E. 5].

## **LEGAL STANDARD**

A district court's review of the Commissioner's final decision is limited to determining whether the correct legal standard was applied and whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted).

Under the Act, an individual is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). Further:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other line of substantial gainful work . . . .

42 U.S.C. § 1382c(a)(3)(B).

The ALJ engages in a sequential five-step evaluation process to make an initial disability determination. 20 C.F.R. § 404.1520(a); *see Johnson*, 434 F.3d at 653. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding the claimant's

2

disability can be made at any step of the process, the ALJ's inquiry ceases. 20 C.F.R. § 404.1520(a)(4).

When evaluating adults, the ALJ denies the claim at step one if the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). At step two, the ALJ denies the claim if the claimant does not have a severe impairment or combination of impairments significantly limiting him from performing basic work activities. *Id.* At step three, the ALJ compares the claimant's impairment to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed, or equivalent to a listed impairment, disability is conclusively presumed without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ then makes a residual functional capacity ("RFC") finding. 20 C.F.R. § 404.1545(e).

In making an RFC finding, the ALJ's considers both severe and non-severe impairments, and any combination thereof, and takes into account both objective medical evidence as well as subjective complaints of pain and limitations. 20 C.F.R. § 404.1545(e). The ALJ further considers the claimant's ability to meet the physical, mental, sensory, and other requirements of accomplishing work. 20 C.F.R. § 404.1545(a)(4). An RFC finding is meant to reflect the most that a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1). Moreover, an RFC finding should reflect the claimant's ability to perform sustained work-related activities in a work setting on regular and continuing basis, meaning eight-hours per day, five days per week. *See* SSR 96-8p; *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).

At step four, the ALJ considers a claimant's RFC to determine whether he can perform past relevant work ("PRW") despite his impairments. 20 C.F.R. § 416.920(a)(4). If not, the ALJ

proceeds to step five of the analysis: establishing whether the claimant–based on his RFC, age, education, and work experience–can make an adjustment to perform other work. *Id.* If the claimant cannot perform other work, the ALJ finds him disabled. *Id.*

## ARGUMENTS

Plaintiff argues that the ALJ erred in his determination that plaintiff did not meet the criteria of 20 C.F.R. Pt. 404, Subpt. P, Appendix I § 12.05(C) ("Listing 12.05(C)"). [D.E. 16]. Plaintiff contends that, contrary to the ALJ's finding, he actually meets all three prongs in Listing 12.05(C) because: (1) his full-scale IQ falls between 60 and 70; (2) his mental impairment significantly limits his work-related functions; and (3) his poor school record indicates that his adaptive functioning deficits ("AFDs") manifested before age 22. *Id.* at 4–6.

Defendant generally contends that the ALJ's evaluation of Listing 12.05(C) is supported by substantial evidence. [D.E. 18]. Although defendant concurs that plaintiff meets the first two prongs of Listing 12.05(C), defendant asserts that the ALJ properly found that there was no evidence that plaintiff's AFDs developed prior to age 22. *Id.* at 5 (citing [Tr. 20]).

## THE ALJ'S DECISION

The ALJ applied the sequential five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 7, 2013, the alleged disability onset date. [Tr. 15]. At step two, the ALJ enumerated plaintiff's severe impairments, including: diabetes mellitus; hypertension; history of osteomyelitis resulting in amputation of gangrenous second right toe; neuropathy; osteoarthritis; obesity; an affective disorder; and a cognitive disorder. *Id.* The ALJ also found the following impairments to be non-severe because they caused no lasting impact: chest wall cellulitis; abscess on the back secondary to a spider bite; elbow/forearm abrasion and scalp hematoma secondary to a fall; hyperlipidemia;

gastroesophageal reflux disease (GERD); pneumonia; gingivitis; acute episode of orthostatic hypotension; vitamin D deficiency; borderline cardiomegaly; episode of left leg cellulitis; episode of sepsis; episode of acute renal failure; anemia; history of methicillin-resistant Staphylococcus aureus (MRSA) infection; and history of substance abuse disorder. *Id.*

At step three, the ALJ found that none of plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 16–20]. The ALJ specifically determined that the criteria for Listing 12.05(C) were not met because:

> [T]he claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant's full scale IQ score falls within the range identified in the paragraph C criteria, the only evidence of record of sub[-]average intelligence comes from IQ testing performed in the recent past; however, there is no evidence of record of sub[-]average intelligence manifesting itself prior to the developmental period. School records reveal the claimant received poor marks and repeated grades, but these records do not offer any explanation for the claimant's poor performance. School records also show the claimant had an IEP (individualized education plan) but again do not indicate the reason . . . . Of significance, the psychological consultative examiner, Jerome Albert, Ph.D., that performed the IQ testing did not make a diagnosis of intellectual disability; rather he made a rule out diagnosis of cognitive disorder and a rule out diagnosis of mild mental retardation (i.e., intellectual disability) . . . . Dr. Albert's offering of only rule out diagnoses is correct because he had no information pertaining to the claimant's developmental period. A rule out diagnosis indicates that not all of the diagnostic criteria are present and further investigation is warranted. However, in the case at bar, further investigation in the form of the school records, which are part of the evidence of record, do not shed further light and do not help to differentiate between the two diagnoses.
>
> In this context, it is important to note that there is a very good reason to suspect the claimant may have suffered a decline in his intellectual abilities and that his intellectual abilities were higher during the developmental period. Specifically, the claimant reported to Dr. Albert that he heavily abused substances for decades, including daily abuse of a massive amount of alcohol from age 17 to age 43. In light of this fact and in light of the fact that there is scant evidence of deficits of adaptive functioning manifesting themselves prior to age 22 and that no

5

acceptable medical source has diagnosed the claimant with intellectual disability, it cannot be said that the claimant's condition satisfies the criteria of listing 12.05.

[Tr. 20]

The ALJ then determined that plaintiff had the RFC to perform a reduced range of light, unskilled work with the following restrictions:

> he can never climb ladders, scaffolds, or ropes; he can occasionally climb ramps and stairs; he can occasionally balance; he can frequently stoop, kneel, crouch, crawl; he must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery; he can understand, remember, and carry out short and simple instructions, which is defined to mean activity that is consistent with a reasoning level of no greater than "two" as defined in the *Dictionary of Occupational Titles*; he can sustain attention and concentration sufficient to carry out those short and simple instructions over the course of au eight hour work day; he can work in proximity to, but not coordination with, coworkers and supervisors; and he would be limited to low stress work, which is specifically defined to mean: no fast paced production, only simple work related decisions, few or no changes in the work setting, and only superficial contact with the public; and the short and simple instructions must be in oral or diagrammatic form.

[Tr. 21].

At the July 16, 2015, hearing the vocational expert ("VE") testified that plaintiff could return to his "PRW" as a marker II, but not to his PRW as a pipefitter helper, or construction worker II. [Tr. 73]. The vocational expert also testified that plaintiff would be able to perform the requirements of the representative occupations of housekeeper (DOT# 323.687-014), label marker (DOT# 920.587-014), and photocopy machine operator (DOT# 207.685-014). [Tr. 73–74].

At step four, the ALJ found that plaintiff could not resume his PRW. [Tr. 28]. At step five–in reliance upon the VE's testimony regarding alternative jobs that plaintiff could perform, and after considering plaintiff's age, education, work experience, and RFC–the ALJ determined that plaintiff was not disabled. [Tr. 28–29]. The ALJ noted that a discrepancy between the DOT and the VE testimony but found that this discrepancy was explained by the fact that the DOT

6

does not address "a limitation of instructions being in oral or diagrammatic form" and that the VE properly based her testimony on her professional experience instead. [Tr. 29].

## **DISCUSSION**

The court finds that the ALJ's determination that plaintiff did not meet the third prong of Listing 12.05(C) is not supported by substantial evidence. *See Perales*, 402 U.S. at 401. Plaintiff's school record indicates that: (1) he received poor grades and was placed in an individualized education program ("IEP") [Tr. 266]; (2) he repeated several grade levels and completed only the eighth grade [Tr. 269]; and (3) he appears to have been classified as mentally handicapped ("TMH") [Tr. 268] and/or educable mentally retarded ("EMR") [Tr. 269]. Plaintiff's testimony confirmed that he was chronically absent from school, that the last grade he completed was the eighth, and that he was in special education classes. [Tr. 43, 53].

Contrary to the ALJ's determination, the totality of these school records do support a finding that plaintiff demonstrated significantly sub-average intellectual functioning and deficits in adaptive behavior prior to age 22. *See, e.g., Dixon v. Astrue*, 2009 WL 4545262, at *3 (E.D.N.C. 2011) (noting that a "plaintiffs enrollment in special education classes, his poor performance in school, his inability to complete the ninth grade, and his lackluster performance on achievement testing is evidence demonstrating deficits in adaptive functioning prior to age 22."); *Watson v. Astrue*, 729 F.Supp.2d 786, 788 (E.D.N.C. 2010) ("The totality of [the] [p]laintiffs school records indicate that deficits in adaptive functioning manifested before the age of 22.").

As the ALJ noted, plaintiff's full-scale IQ, measured at 67 during Dr. Albert's November 2013 intelligence testing administration [Tr. 317], falls within the Listing 12.05(C) range. *See* 20

7

C.F.R. Pt. 404, Subpt. P, Appendix I § 12.05(C). Although the ALJ ascribes plaintiff's low IQ to a history of alcohol abuse, *see* [Tr. 20], the ALJ gives no evidence to support this speculation. Relevant precedent holds that that, without evidence of a decline, IQ findings are presumed to be relatively stable over time. *See Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F.2d 666, 668–69 (4th Cir. 1989) (noting that, "in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant." (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985))).

Because these school records support plaintiff's claim that he satisfies the third prong of Listing 12.05(C), and because defendant admits that the ALJ found that plaintiff meets the other two prongs, *see* [D.E. 18] at 5 (citing [Tr. 16, 20]), the court concludes that plaintiff has met his burden of demonstrating that his impairment fulfills all three specific criteria of Listing 12.05(C). *See* 20 C.F.R. § 416.925; *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."). Thus, remand would serve no purpose here. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974) (holding that a district court may "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose").

Accordingly, the court, in its discretion, reverses the Commissioner's decision and remands for an award of benefits as of plaintiff's alleged onset date of August 13, 2012. *See* 42 U.S.C. § 405(g) ("The [reviewing] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980) (When "[o]n the state of the record, [plaintiff's]

entitlement to benefits is wholly established," reversal for award of benefits rather than remand is appropriate); *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987) ("The decision of whether to reverse and remand for calculation of benefits, or reverse and remand for a new hearing, is one which lies within the sound discretion of the court.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgement on the pleadings [D.E. 15] is GRANTED, defendant's motion for judgement on the pleadings [D.E. 17] is DENIED, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for an award of benefits.

SO ORDERED.

This _2_ day of March, 2018.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE